United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| ALEJANDRO PICAZO,<br><br>    Plaintiff,<br><br>v.<br><br>RANDSTAD US, LP,<br><br>    Defendant. | Case No. 5:16-cv-06644-HRL<br><br>**ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. Nos. 57, 75, 80, 89, 96, 97, 102 |

Pro se[1] plaintiff Alejandro Picazo sues his former employer, Randstad US, L.P. (Randstad), for violation of the California Fair Employment and Housing Act (FEHA), Cal. Gov. Code § 12900, et seq., based on alleged disability discrimination, failure to accommodate his claimed disability, failure to engage in in the interactive process, failure to prevent discrimination, retaliation, and wrongful termination. Picazo filed his complaint in state court. Randstad removed the matter here, asserting diversity jurisdiction, 28 U.S.C. § 1332. All parties have expressly consented that all proceedings in this matter may be heard and finally adjudicated by the undersigned. 28 U.S.C. § 636(c); Fed. R. Civ. P. 73. Now before the court are the parties'

---

[1] Plaintiff initially had counsel, but those attorneys were permitted to withdraw from representation. Picazo subsequently entered his appearance on his own behalf.

1 respective motions for summary judgment. Upon consideration of the moving and responding
2 papers, as well as the oral arguments presented, the court denies plaintiff's motion and grants
3 defendant's motion.

**BACKGROUND**

Unless otherwise indicated, the following facts are not disputed.

Randstad is a staffing services company that recruits, hires, and places applicants (referred to as "Talent") with various clients. One such client is Taylor Farms, which operates an agricultural processing facility in Salinas, California. Although Taylor Farms has its own regular, full-time workforce, it uses Randstad's services to provide additional workers when needed. Taylor Farms generally supervises the work of Talent provided by Randstad. However, Randstad works together with Taylor Farms on human resources issues. And, Randstad maintains a branch office in Salinas, where it employs several recruiters, including Naomi Guyunn, Florence Shirakawa, and Rogelio Zamudio. Defendant also provides remote management support for the Salinas branch, including Joan Orzo, a human resources advisor, and Kristina McArthur, a workers compensation claims manager.

Randstad says it has policies prohibiting discrimination based on all classifications protected by law, including disability. (Dkt. 97-5, Declaration of Joan L. Orzo (Orzo Decl.) ¶ 6, Ex. A). Additionally, defendant has a drug and alcohol policy prohibiting the use of drugs and alcohol by all Randstad Talent while at work. (*Id.*, Ex. A at 21; *see also* Dkt. 97-1 (Declaration of Michael E. Harvey (Harvey Decl.), ¶ 3, Ex. A (Picazo Depo. at 195:25-196:5, Ex. E)). Pursuant to that policy, Randstad requires drug and alcohol screening for "[a]ny talent who is involved in an accident or injury while performing duties on Randstad property or Randstad business away from Randstad property, including Randstad client property or business . . . to determine fitness for duty." (Harvey Decl., Ex. A (Picazo Depo. at 195:25-196:5, Ex. E); *see also* Orzo Decl., Ex. A at 24). A positive alcohol/drug screen, or the failure to submit to the screening, will result in immediate dismissal. (Harvey Decl., Ex. A (Picazo Depo. at 195:25-196:5, Ex. E)).

When Talent begin employment with Randstad, they are required to review and sign Randstad's drug and alcohol policy, as well as to authorize and consent to post-accident drug and

alcohol testing. (Harvey Decl., Ex. A (Picazo Depo. at 195:25-196:5, Ex. E); Orzo Decl. at ¶ 7). Additionally, Talent must confirm that they "understand that [their] employment may be terminated if the test result is positive, if [they] refuse to consent to testing or a search, or if there is evidence which indicates (in the opinion of the company or of the testing laboratory) that the testing sample was tampered with, substituted or altered in any way." (Harvey Decl., Ex. A (Picazo Depo. at 195:25-196:5, Ex. E)). Plaintiff acknowledged that, during his employment with Randstad, he was required to comply with the company's policies; that he was obliged to communicate with Randstad about his work attendance; that he should notify Randstad right away if he was hurt on an assignment; and that he could ask for an accommodation from Randstad if he was unable to work due to a disability. (Id. (Picazo Depo. at 209:14-17; 211:3-212:4, 9-21)). Picazo also understood that in the event he was injured while at work, he would be subject to post-accident alcohol and drug screening and that the failure to submit to such testing would result in his immediate dismissal. (*Id.* (Picazo Depo. at 198:24-199:25, Ex. E)).

Randstad hired Picazo in late 2015 and placed him in his first temporary assignment with Taylor Farms in January 2016. In that two-week assignment, plaintiff moved spinach and lettuce in and out of a drying machine. The assignment ended when Taylor Farms no longer required plaintiff's services.

On June 20, 2016, Picazo began his second assignment at Taylor Farms, working evenings on a lettuce conveyor line. In this assignment, he was responsible for picking up pallets of lettuce and placing the produce onto conveyors.

On June 21, 2016, his second day on the job, Picazo injured his left wrist while "dumping Romaine trays of lettuce" and then "fixing them in a certain way repeatedly." (Harvey Decl., Ex. A (Picazo Depo. at 232:20-21, 23). He reported the injury to his Taylor Farms supervisor, Luis Becerra, but did not notify Randstad that day. (*Id.* (Picazo Depo. at 233:8-20, 239:6-10)). Taylor Farms gave plaintiff some ice and asked if he wanted to see a doctor. (*Id.* (Picazo Depo. at 235:5-13; 235:23-236:1; 236:19-23)). Picazo declined, stating that he was tired and just wanted to go home and rest and see if he felt better the next day. (*Id.* (Picazo Depo. at 236:24-237:4)). Plaintiff testified that although he was in pain, at that time he didn't believe the injury was serious and

3

thought it was "just a swollen thing" or a temporary sprain. (*Id.* (Picazo Depo. at 237:5-13)). Becerra notified Randstad that Picazo "reported a work injury at approx. 21:48 tonight," "sprained his left wrist while he was dumping romaine on the trim line," declined medical attention, and went home. (Dkt. 97-4, Declaration of Kristina McArthur (McArthur Decl.) ¶ 5, Ex. A).

McArthur avers that she was informed of Becerra's report the following day, June 22, 2016. (McArthur Decl. ¶ 5). That same day, plaintiff called Randstad's Salinas office and spoke with recruiter Florence Shirakawa. He told her that he suffered a workplace injury the day before and that he was going to the hospital and wouldn't be able to work at Taylor Farms that day. (Harvey Decl., Ex. A (Picazo Depo. at 239:15-240:17); Dkt. 97-6, Declaration of Florence Shirakawa (Shirakawa Decl.) ¶ 8). Picazo did not give Shirakawa any specifics about his injury: "I just told them it was my left wrist; that I still didn't know because I was going to go to the emergency room." (Harvey Decl., Ex. A (Picazo Depo. at 240:24-241:8). Shirakawa responded that "it was fine," and instructed Picazo to bring paperwork from the doctor and to come in as soon as possible to fill out workplace injury forms. (*Id.* (Picazo Depo. at 239:18-240:4); Shirakawa Decl. ¶ 8).

Following his phone call with Shirakawa, Picazo visited the emergency room at Natividad Medical Center. (Harvey Decl., Ex. A (Picazo Depo. at 245:4-25)). He says that he then called Randstad a second time on June 22, again speaking with Shirakawa. He told her that he had a "first injury report" that he would bring the next day and that the doctor "took[] [him] off work because [he] couldn't continue working like that." (*Id.* (Picazo Depo. at 248:5-249:5)). Shirakawa again told him it was fine and said to bring the paperwork to her. (*Id.* (Picazo Depo. at 249:6-8)).

On June 23, 2016, plaintiff went to the Randstad Salinas office to fill out workplace injury paperwork and to file a workers compensation claim. (Harvey Decl., Ex. A (Picazo Depo. at 34:5-13; 249:16-22)). Plaintiff says that Randstad would not use his paperwork and instead made him fill out a lot of the company's own forms; but, he acknowledged that defendant might have its own procedures and forms that need to be completed when an employee gets hurt. (*Id.* (Picazo Depo. at 252:1-17, 255:4-16)). At that time, Picazo told Randstad that the doctor took him off work, that

4

he didn't know how long he was going to miss work, and that he needed a few days off. (*Id.* (Piczao Depo. at 252:19-253:6; 253:25-254:7). He did not ask anyone at Randstad whether he could transfer to another job. (*Id.* (Picazo Depo. at 254:18-21)). Plaintiff was told that, pursuant to Randstad's policy, he needed to see the company's designated doctor at the Pinnacle Healthcare Clinic (Pinnacle). (*Id.* (Picazo Depo. at 255:17-25); Shirakawa Decl. ¶ 9). Plaintiff went to Pinnacle that same day, but got tired of waiting and rescheduled for the next day. (Harvey Decl., Ex. A (Picazo Depo. at 258:8-18)).

Picazo returned to Pinnacle on June 24, 2016 to have his wrist examined and also to submit to a post-accident alcohol and drug screen. Plaintiff's alcohol and drug testing involved two separate tests--a breath alcohol test and a urine drug screen---which were administered by Llamilecz Gonzales, a Pinnacle medical assistant. (Harvey Decl. ¶ 3, Ex. B (Picazo Depo. at 313:3-6; 313:11-314:10); Dkt. 97-2, Declaration of Llamilecz Gonzales (Gonzales Decl.), ¶¶ 5, 7-8, 11). After obtaining Picazo's consent, Gonzales first conducted the breath alcohol test, which plaintiff passed. (Gonzales Decl. ¶¶ 6-7. 11, Exs. A, B).

For the urine drug screen, Gonzales instructed plaintiff to empty his pockets, select a sealed cup, and "go pee" in a restroom without any direct observation. (Harvey Decl., Ex. B (Picazo Depo. at 315:6-316:11); Gonzales Decl. ¶ 12). Gonzales avers that, when plaintiff returned, she noted that his urine sample had "no temperature," an indication that the sample had not been expelled recently from a human body. (Gonzales Decl. ¶¶ 12, 13). Pursuant to Pinnacle's standard protocol for Randstad employees, Gonzales says she told Picazo that, because his sample returned no temperature, he would have to submit a second sample, this time under direct observation by a male physician. (*Id.* ¶ 13). Pinnacle's protocol also provided that, during this time, Picazo could not leave the clinic. (*Id.*). According to Gonzales, Picazo initially agreed to provide a second sample, but then said that he might have to leave "for some reason related to a 'truck.'" (*Id.* ¶¶ 13-14). Gonzales says that she told plaintiff that "if he walked out before providing his second urine sample under direct observation, Pinnacle would treat his drug test as a 'direct fail.'" (*Id.* ¶ 14). Nevertheless, Gonzales says plaintiff walked out of the clinic without providing a second sample. (*Id.*, Ex. D).

5

1    Gonzales then phoned Randstad and informed recruiter Naomi Guyunn that Picazo walked
2    out on his drug screen. (Gonzales Decl. ¶ 15; Dkt. 97-3, Declaration of Naomi Guyunn (Guynn
3    Decl.) ¶ 8, Ex. A at 2). Gonzales advised Guyunn that a second urine sample was required
4    because plaintiff's first sample had no temperature, but that plaintiff left the clinic without
5    providing a second sample, despite Gonzales' warning that leaving would result in an "automatic
6    fail." (Guyunn Decl. ¶ 8). Gonzales then faxed Randstad a copy of Picazo's test form, showing
7    that he passed the alcohol test, but failed the drug screen. (Gonzales Decl. ¶ 15, Ex. E; McArthur
8    Decl. ¶ 10, Ex. D). Picazo denies that he failed a drug test, but admits that he doesn't know
9    whether anyone told Randstad that he failed the test or didn't comply with the testing. (Harvey
10   Decl., Ex. A (Picazo Depo. at 263:18-23)).

11   Guyunn entered notes of her phone call with Gonzales on plaintiff's file and sent an email
12   to McArthur explaining, "Pinnacle Healthcare just called and notified us that Alejandro walked
13   out of the clinic." (Guyunn Decl. ¶ 9, Ex. B). Guyunn also informed recruiter Rogelio Zamudio
14   about Gonzales' call, and Zamudio, too, sent an email to McArthur advising that plaintiff had
15   walked out of his drug screening. (Dkt. 97-7, Declaration of Rogelio Zamudio (Zamudio Decl.) ¶
16   5, Ex. A).

17   By the time those emails were sent, McArthur had already left work for the weekend; but,
18   she saw them upon her return to the office the following Monday, June 27, 2016. (McArthur
19   Decl. ¶¶ 9-10). McArthur says she concluded that plaintiff's refusal to complete the drug screen
20   violated Randstad's drug and alcohol policy. And, that same morning, she advised the Salinas
21   branch staff that Picazo's employment was terminated. She instructed them to process his final
22   paycheck and to send him a termination letter. (*Id.* ¶ 11).

23   It so happened that on June 27, 2016, Picazo returned to work at Taylor Farms, but he did
24   not tell anyone at Randstad that he was going back to work. (Harvey Decl., Ex. B (Picazo Depo.
25   at 323:3-13, 325:2-7)). He tried working on the conveyor line with one hand, but Becerra told him
26   that he "couldn't work like that." (*Id*. (Picazo Depo. at 326:15-328:2)). Picazo says he asked
27   Becerra if he could get another position, and Becerra responded that plaintiff would have to
28   contact Randstad. (*Id*. (Picazo Depo. at 328:9-16)).

According to Randstad, plaintiff did not contact them for over a week, when he called on July 5, 2016 to ask about picking up his paycheck. (Harvey Decl., Ex. B (Picazo Depo. at 329:24-330:7); Shirakawa Decl. ¶ 9). During that call, Picazo says he asked "when was [he] going to get another job or if [he] was going to get another position," but Randstad said it did not have any available work. (*Id.*, Ex. B (Picazo Depo. at 330:12-331:2)).

Several days later, on July 8, 2016, Picazo went to the Salinas office to pick up his paycheck and to give them a work status report and other papers. (Harvey Decl., Ex. B (Picazo Depo. at 331:11-23)). He met with Shirakawa, who handed him a letter advising that his employment with Randstad was terminated, effective that day, "due to violation of company policy." (Dkt. 57 at ECF p. 35; Harvey Decl., Ex. B (Picazo Depo., Ex. M)).

Plaintiff acknowledges that the letter does not say that he was being fired because of his wrist injury, and that he was told during the July 8 visit that the termination was "because of a drug screen test." (Harvey Decl., Ex. A (Picazo Depo. at 259:23-24); Ex. B (Picazo Depo. 337:6-25, Ex. M)). Nevertheless, he believes that Randstad used the drug screen as an excuse. He claims that, in reality, defendant fired him because of his injury (diagnosed as tendinitis) and in retaliation for filing a workers compensation claim and requesting accommodation. He filed this lawsuit, asserting six state law claims for relief under FEHA: (1) disability discrimination, Cal. Gov. Code § 12940; (2) failure to accommodate disability, Cal. Gov. Code § 12940(m); (3) failure to engage in an interactive process, Cal. Gov. Code § 12940(n); (4) failure to prevent discrimination, Cal. Gov. Code § 12940(k)[2]; (5) wrongful termination in violation of public policy and Cal. Govt. Code § 12940, et seq.; and (6) unlawful retaliation, Cal. Gov. Code § 12940(h).

Both sides have moved for summary judgment. In support of his motion, plaintiff submitted myriad filings over several months, including an additional submission of documents after the motion was heard and deemed submitted. Included among them are documents indicating that plaintiff wished to amend his complaint to include as defendants some Randstad

---

[2] Although the complaint identifies Cal. Gov. Code § 12940(i) as the basis for this claim, the statutory provision concerning an employer's duty to prevent discrimination is found at § 12940(k).

1    employees.  Defendant objects to all (or most) of plaintiff's submissions on various grounds,

2    including that they are untimely, irrelevant, not properly authenticated, and were not filed in

3    compliance with the court's Civil Local Rules.  Although defendant's objections are well-taken,

4    the court nevertheless has read and considered every one of Picazo's filings in connection with the

5    pending motions.  For the reasons discussed below, however, the court concludes that plaintiff has

6    failed to establish that he is entitled to summary judgment as a matter of law, and that he has not

7    submitted sufficient evidence raising a genuine issue of material fact precluding summary

8    judgment for defendant.

## LEGAL STANDARD

A motion for summary judgment should be granted if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).  The moving party bears the initial burden of informing the court of the basis for the motion, and identifying portions of the pleadings, depositions, answers to interrogatories, admissions, or affidavits which demonstrate the absence of a triable issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  In order to meet its burden, "the moving party must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Companies, Inc.,* 210 F.3d 1099, 1102 (9th Cir. 2000).

If the moving party meets its initial burden, the burden shifts to the non-moving party to produce evidence supporting its claims or defenses.  *See Nissan Fire & Marine Ins. Co., Ltd.*, 210 F.3d at 1102.  The non-moving party may not rest upon mere allegations or denials of the adverse party's evidence, but instead must produce admissible evidence that shows there is a genuine issue of material fact for trial.  *See id*.  A genuine issue of fact is one that could reasonably be resolved in favor of either party.  A dispute is "material" only if it could affect the outcome of the suit under the governing law.  *Anderson*, 477 U.S. at 248-49.

"When the nonmoving party has the burden of proof at trial, the moving party need only point out 'that there is an absence of evidence to support the nonmoving party's case.'"

*Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001) (quoting *Celotex Corp.*, 477 U.S. at 325). Once the moving party meets this burden, the nonmoving party may not rest upon mere allegations or denials, but must present evidence sufficient to demonstrate that there is a genuine issue for trial. *Id.*

## DISCUSSION

### A. Disability discrimination, Cal. Govt. Code § 12940(a)

Picazo alleges that Randstad fired him because of his tendinitis. FEHA makes it unlawful for an employer to terminate a person from employment because of a physical or mental disability or medical condition. Cal. Gov. Code § 12940(a). For the evaluation of disability discrimination claims under FEHA, California has adopted the so-called *McDonnell-Douglas*[3] three-stage, burden-shifting test. *Wills v. Super. Ct.,* 195 Cal. App.4th 143, 159 (2011) (citing *Guz v. Bechtel Nat'l, Inc.*, 24 Cal.4th 317, 354 (2000)). In the first stage, Picazo "bears the burden to establish a prima face case of discrimination." *Id*. His burden at this stage is "not onerous" and "the evidence necessary to satisfy it is minimal." *Id.* In order to establish a prima facie case, Picazo must show that he "(1) suffered from a disability or was regarded as suffering from one; (2) could perform the essential duties of the job with or without reasonable accommodations; and (3) was subjected to an adverse employment action because of the disability or perceived disability." *Id*. at 159-60.

If plaintiff meets this burden, then the burden shifts to Randstad to articulate a legitimate nondiscriminatory reason for Picazo's termination. *Wills*, 195 Cal. App.4th at 160. "This likewise is not an onerous burden, and is generally met by presenting admissible evidence showing the defendant's reason for its employment decision." *Id*. (citations omitted).

If Randstad presents evidence showing a legitimate, nondiscriminatory reason, then the burden shifts to Picazo to establish that Randstad intentionally discriminated against him. *Wills*, 195 Cal. App.4th at 160. He "may satisfy this burden by proving the legitimate reasons offered by the defendant were false, creating an inference that those reasons served as a pretext for

---

[3] *McDonnell Douglas Corp. v. Green*, 411 U.S 792, 93 S. Ct. 1817, 26 L.Ed.2d 688 (1973).

9

discrimination." *Id*.

"A defendant's summary judgment motion slightly modifies the order of these [*McDonnell Douglas*] showings." *Wills*, 195 Cal. App.4th at 160 (citation omitted). Thus, on its affirmative motion for summary judgment, Randstad has "the initial burden to either (1) negate an essential element of [plaintiff]'s prima face case or (2) establish a legitimate, nondiscriminatory reason for terminating" his employment. *Id*. (citations omitted). Once Randstad makes that showing, to avoid summary judgment, Picazo "must offer substantial evidence that the employer's stated nondiscriminatory reason for the adverse action was untrue or pretextual, or evidence the employer acted with a discriminatory animus, or a combination of the two, such that a reasonable trier of fact could conclude the employer engaged in intentional discrimination." *Id*. (citations omitted).

As part of his prima facie case, Picazo must establish that he was terminated "because of" his tendinitis. This requires proof that "the employer had knowledge of the employee's disability when the adverse employment decision was made," because "[a]n adverse employment decision cannot be made 'because of' a disability, when the disability is not known to the employer." *Brundage v. Hahn*, 57 Cal. App.4th 228, 236-37 (1997); *see also Avila v. Continental Airlines, Inc.*, 165 Cal. App.4th 1237, 1247 (2008) (same). Randstad contends that plaintiff's discrimination claim fails because he has not presented evidence that Randstad knew of his alleged disability when it terminated his employment.

"[A]n employer 'knows an employee has a disability when the employee tells the employer about his condition, or when the employer otherwise becomes aware of the condition, such as through a third party or by observation.'" *Featherstone v. S. California Permanente Med. Group*, 10 Cal. App.5th 1150, 1167 (2017) (quoting *Faust v. California Portland Cement Co.* 150 Cal.App.4th 864, 887 (2007)). "'While knowledge of the disability can be inferred from the circumstances, knowledge will only be imputed to the employer when the fact of disability is the *only* reasonable interpretation of the known facts.'" *Id*. (quoting *Brundage*, 57 Cal. App.4th at 237). "'Vague or conclusory statements revealing an unspecified incapacity are not sufficient to put an employer on notice of its obligations under the [FEHA].'" *Id*. (quoting *Brundage*, 57 Cal.

10

App.4th at 237).

Randstad argues that plaintiff did not provide the company with anything more than vague statements about his claimed incapacity. It points to Picazo's testimony that, at the time of the incident, he himself did not believe the injury to be serious or anything more than a temporary sprain. (Harvey Decl., Ex. A (Picazo Depo. at 237:8-13)). Defendant also presents company records indicating that when Becerra notified Randstad of the injury, he also described it as a "sprained wrist." (McArthur Decl. ¶ 5, Ex. A). Further, plaintiff testified that when he first notified Randstad of his injury on June 22 (the day after it happened), he told Shirakawa only that he injured his left wrist and that he couldn't work that day because he was going to see a doctor. (Harvey Decl., Ex. A (Picazo Depo. at 240:22-241:8, 243:9-20)). And, when he returned to the Salinas office on June 23, plaintiff testified in deposition that he told Randstad only that the doctor took him off work, that he didn't know how long he was going to miss work, and that he needed a few days off. (*Id.* (Piczao Depo. at 252:19-253:6; 253:25-254:7)). Additionally, McArthur states that she was the decisionmaker with respect to Picazo's termination and that, at the time she made that decision, she had no specific information about the nature or severity of Picazo's condition. (McArthur Decl. ¶ 12; *see also* Harvey Decl., Ex. B (Picazo Depo. at 335:14-336:11)).

Picazo does not offer any argument refuting this evidence, but appended to his summary judgment papers are:

- A June 24, 2016 Pinnacle "Work Status Report" stating that plaintiff had "Tendonitis of wrist, left" and that he could return to modified duty (i.e., "NO Use of left hand") (Dkt. 57 at ECF p. 21);
- A doctor's report, dated June 27, 2016, stating that plaintiff was diagnosed with "Left wrist tendinitis," that he was to be re-examined in three days, and that he could return to work on "Modified duty" (with no specified restrictions). (Dkt. 57 at ECF p. 19).
- A third doctor's report, of a July 8, 2016 exam, stating that Picazo had "Left wrist tendinitis" and that he could return to modified work (with no specified restrictions). (*Id*. at ECF p. 30).

11

- A July 8, 2016 Pinnacle report stating that Picazo had "Tendonitis of wrist, left" and that he could return to modified duty (i.e., no lifting greater than 5 pounds, no repetitive grasping with the left hand, and limited use of the left hand). (*Id*. at ECF p. 25).

Putting aside that Picazo does not clearly identify what these documents are, and that none of them have been authenticated, there is no evidence that the information in these documents was communicated to Randstad prior to plaintiff's termination. Moreover, "the determination of whether an individual has a disability is not necessarily based on the name or diagnosis of the impairment the person has, but rather on the effect of that impairment on the life of the individual." *Arteaga v. Brink's, Inc.*, 163 Cal. App.4th 327, 348 (2008) (citation omitted). While Picazo has also submitted many medical records and other documents post-dating his termination, "[e]vidence that a decision maker learned of a plaintiff's disability after deciding to take adverse employment action is not probative of whether the decision maker was aware of the plaintiff's disability when he or she made the decision.'" *Featherstone*, 10 Cal. App.5th at 1167 (quoting *Avila*, 165 Cal.App.4th at 1251).

The closest evidence in plaintiff's favor is as follows: In deposition, Picazo testified that on June 22, he told Shirakawa he had a "first injury report" that he would bring to her the following day. (Harvey Decl., Ex. A (Picazo Depo. at 248:11-14)). Plaintiff failed to specify where, among his myriad filings, that report is located. Nevertheless, appended to his initial summary judgment brief, the court found a June 22, 2016 "Doctor's First Report of Occupational Injury or Illness." (Dkt. 57 at ECF p. 11). It states that Picazo was diagnosed with "Acute [left] forearm strain [due to] overuse." (*Id.*). The report further indicates that further follow-up was required, and that plaintiff could not perform his usual work, but could return to work (with no specified return date) with the requirement that he "must wear splint." (*Id.*). And, in response to interrogatories, plaintiff says that on June 23, 2016 he discussed a "Doctors First Report of Occupational Injury of Illness from 06/22/16" in person with one Judith Leal, who is identified elsewhere in plaintiff's papers as a Randstad supervisor. (Dkt. 95 at ECF p. 7; Dkt. 57 at ECF p. 12). Plaintiff's discovery responses go on to say that Shirakawa and Zamudio knew about the

12

discussions with Leal. The discovery responses are vague as to what exactly Picazo might have communicated to Leal about his condition and also what Shirakawa and Zamudio may have known about those discussions. (*Id.*). However, liberally construed in plaintiff's favor, the injury report coupled with his discovery responses, suggest, at least, that Leal may have understood that Picazo had an "Acute [left] forearm strain," and could not perform his usual work, but could return to work at some point, but had to wear a splint. Viewing the record in the light most favorable to Picazo, and drawing all reasonable inferences in his favor, this evidence raises a fact issue whether Randstad was on notice that plaintiff suffered from something more than just a vague "temporary sprain."

But, even assuming that Picazo could establish a prima facie case of disability discrimination, Randstad has presented competent evidence of a legitimate, nondiscriminatory reason for terminating his employment---namely, plaintiff's failure to submit to the drug screen at Pinnacle. "It is the employer's honest belief in the stated reasons for firing an employee and not the objective truth or falsity of the underlying facts that is at issue in a discrimination case." *Wills*, 195 Cal. App.4th at 170 (citation omitted). "'While the objective soundness of an employer's proffered reasons supports their credibility . . ., the ultimate issue is simply whether the employer acted with *a motive to discriminate illegally*.'" *Id*. at 171 (quoting *Guz*, 24 Cal.4th at 358). "'Thus, 'legitimate' reasons [citation] in this context are reasons that are *facially unrelated to prohibited bias*, and which, if true, would thus preclude a finding of *discrimination*.'" *Id*. (quoting *Guz*, 24 Cal.4th at 358). Here, defendant's evidence demonstrates that the only reason Randstad fired plaintiff is because he walked out of the Pinnacle clinic without completing the drug screen. (McArthur Decl. ¶¶ 10-12, Exs. B & D); Shirakawa Decl. ¶¶ 10-11).

To avoid summary judgment, Picazo "must offer substantial evidence that the employer's stated nondiscriminatory reason for the adverse action was untrue or pretextual, or evidence the employer acted with a discriminatory animus, or a combination of the two, such that a reasonable trier of fact could conclude the employer engaged in intentional discrimination." *Wills*, 195 Cal. App.3d at 160 (citations omitted). Here, Picazo "cannot simply show that the employer's decision was wrong or mistaken, since the factual dispute at issue is whether discriminatory animus

13

motivated the employer, not whether the employer is wise, shrewd, prudent, or competent." *Id*. Rather, to meet his burden, Picazo "must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence, and hence infer that the employer did not act for [the asserted] nondiscriminatory reasons." *Featherstone*, 10 Cal. App.5th at 1159 (citations omitted).

Although it is not the court's task to scour the record in search of a genuine issue of triable fact, *see Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996), the court has reviewed all of plaintiff's filings. There is nothing in the record presented suggesting that Picazo was fired because of his wrist injury. Defendant points out that when asked, in deposition, to explain why he believes he was fired because of his wrist, Picazo stated:

> Yes. Because when I went, like, on July 8th, to take them the work status, they told me -- and to pick up my check, they told me that I was -- they gave me this letter – they didn't even tell me nothing. They just gave me the letter saying "Termination of Policy," and I asked them why? And then she told me because of a drug screen test. And that's why I knew it was a lie, and that's why I knew it was retaliation, and they didn't want to deal with me no more. Like, for whatever reason, they didn't give me -- they didn't want to give me my human rights. And that's their excuse they using because they violated the law, too.

(Harvey Decl., Ex. B (Picazo Depo. at 259:6-260:4). In other words, plaintiff believes that Randstad is lying about the drug screen test, but all he has presented is just that---his belief. Although plaintiff denies that he failed a drug test, he does not refute that he walked out of the Pinnacle clinic before completing the drug screen. And, at the motion hearing, he said only that he couldn't remember. Further, the record demonstrates that Picazo also understood that if he was injured while at work, his failure to submit to mandatory alcohol and drug testing would result in his immediate dismissal. (*Id*. (Picazo Depo. at 198:4-199:25, Ex. E)).

Because Picazo has presented no competent evidence refuting defendant's proffered nondiscriminatory reason for his termination, on this claim his summary judgment motion is denied and defendant's is granted.

**B.     Failure to accommodate disability, Cal. Govt. Code § 12940(m)**

FEHA makes it an unlawful employment practice for an employer "to fail to make

14

reasonable accommodation for the known physical or mental disability of an applicant or employee." Cal. Gov. Code § 12940(m). "The elements of a failure to accommodate claim are (1) the plaintiff has a disability under the FEHA, (2) the plaintiff is qualified to perform the essential functions of the position, and (3) the employer failed to reasonably accommodate the plaintiff's disability." *Scotch v. Art Institute of California-Orange County, Inc.*, 173 Cal. App.4th 986, 1009-10 (2009).

Defendant argues that plaintiff's failure to establish Randstad's knowledge of his claimed disability in connection with his disability discrimination claim is also fatal to this one, emphasizing that FEHA requires an employer to make reasonable accommodation for a "***known*** physical . . . disability." 129 Cal. Gov. Code § 12940(m) (emphasis added). For the reasons discussed above, and generously construing the record in plaintiff's favor, there is a fact issue whether Randstad was on notice that plaintiff suffered from something more than just a vague "temporary sprain."

Nevertheless, defendant contends that Picazo never requested an accommodation, citing the general principle underlying a claim for failure to accommodate that "[f]irst, the employee must request an accommodation." *Avila*, 165 Cal. Capp.4th at 1252. "[T]he employee can't expect the employer to read his mind and know he secretly wanted a particular accommodation and sue the employer for not providing it." *Id*. at 1252-53.

As discussed, Randstad has presented evidence that Picazo understood that he could ask for an accommodation from Randstad if he was unable to work due to a disability. (Harvey Decl., Ex. A (Picazo Depo. at 212:17-21, 213:7-15)). Additionally, Randstad presents declarations in which defendant's employees aver that after Picazo's work injury, they did not receive any information that he needed a reasonable accommodation. (McArthur Decl. ¶ 12; Guynn Decl. ¶ 10;Shirakawa Decl. ¶¶ 8, 12; Zamudio Decl. at ¶ 6).

Although Randstad contends that plaintiff never requested a leave of absence, "no particular form of request is required," *Avila*, 165 Cal. App.4th at 1252, and the record shows that, in the days following his accident, Picazo did ask for time off. Nevertheless, the record also demonstrates that defendant accommodated that request: On June 22, plaintiff advised that he

15

United States District Court
Northern District of California

1 couldn't work that day, which Shirakawa said was "fine" and told him "not to worry about that."

2 (Harvey Decl., Ex. A (Picazo Depo. at 239:15-240:17); Shirakawa Decl. ¶ 8). And, on June 23,

3 Picazo told Randstad that the doctor took him off work, that he didn't know how long he was

4 going to miss work, and that he needed a few days off. (*Id.* (Piczao Depo. at 252:19-253:6;

5 253:25-254:7). He did not, on that day, ask anyone at Randstad whether he could transfer to

6 another job. (*Id*. (Picazo Depo. at 254:18-21)). And, when he returned to work at Taylor Farms

7 on June 27, plaintiff did not tell Randstad. (Harvey Decl., Ex. B (Picazo Depo. at 323:3-13;

8 325:2-7). Plaintiff has not refuted this evidence or presented evidence raising a triable issue that

9 he requested an accommodation (other than time off, which was granted).

10 The record reveals one other inquiry Picazo made about other work. When he called the

11 Salinas branch on July 5, 2016 to ask about picking up his paycheck, plaintiff says that he also

12 asked "when was [he] going to get another job or if [he] was going to get another position," to

13 which Randstad responded that it did not have any available work. (Harvey Decl., Ex. B (Picazo

14 Depo. at 330:12-331:2)). In his complaint, he alleges that transferring him to a different position

15 in the company or permitting him to return to work after his medical leave were reasonable

16 accommodations that Randstad should have made. (Dkt. 1, Complaint ¶ 30). This inquiry about

17 another position, however, came after Picazo walked out before completing the Pinnacle drug

18 screen and at a time when Randstad apparently was unaware that he had tried to return to work.

19 Citing analogously to *Ross v. RagingWire Telecommunications, Inc.*, 42 Cal.4th 920 (2008),

20 Randstad argues that plaintiff essentially contends that the company was obliged to accommodate

21 him by making an exception to its alcohol and drug testing policy---an obligation, says defendant,

22 that FEHA does not impose. The court agrees.

23 In *Ross*, the plaintiff, a newly hired employee whose physician prescribed medical

24 marijuana for chronic pain, was terminated when a required drug test revealed his marijuana use.

25 The *Ross* plaintiff did "not in his complaint identify the precise accommodation defendant would

26 need to make in order to enable him to perform the essential duties of his job." *Ross*, 42 Cal.4th at

27 926. Thus, the court inferred that the plaintiff was "asking defendant to accommodate his use of

28 marijuana at home by waiving its policy requiring a negative drug test of new employees." *Id*.

16

Holding that "FEHA does not require employers to accommodate the use of illegal drugs," the *Ross* court concluded that the plaintiff could not state a FEHA claim based on his employer's refusal to accommodate his use of marijuana. *Id*. at 926, 931. Likewise, here, Picazo cannot establish that defendant was required to make an exception to its alcohol and drug testing policy as an accommodation for his claimed disability by providing him with another position after he failed to complete the drug screen. On this claim, plaintiff's summary judgment motion is denied and defendant's is granted.

### C. Failure to engage in an interactive process, Cal. Govt. Code § 12940(n)

FEHA requires an employer "to engage in a timely, good faith, interactive process with the employee or applicant to determine effective reasonable accommodations, if any, in response to a request for reasonable accommodation by an employee or applicant with a known physical or mental disability or known medical condition." Cal. Gov. Code § 12940(n). "The interactive process imposes burdens on both the employer and employee. The employee must initiate the process unless the disability and resulting limitations are obvious." *Scotch*, 173 Cal. App.4th at 1013. "Once the interactive process is initiated, the employer's obligation to engage in the process in good faith is continuous." *Id.* This means that the "employer's obligation to engage in the interactive process extends beyond the first attempt at accommodation and continues when the employee asks for a different accommodation or where the employer is aware that the initial accommodation is failing and further accommodation is needed." *Id.*

"To prevail on a claim under section 12940, subdivision (n) for failure to engage in the interactive process, an employee must identify a reasonable accommodation that would have been available at the time the interactive process should have occurred." *Scotch*, 173 Cal. App.4th at 1019. "An employee cannot necessarily be expected to identify and request all possible accommodations during the interactive process itself because [e]mployees do not have at their disposal the extensive information concerning possible alternative positions or possible accommodations which employers have." *Id*. (citation omitted). Nevertheless, "once the parties have engaged in the litigation process, to prevail, the employee must be able to identify an available accommodation the interactive process should have produced." *Id.*

17

Here, Randstad argues that, to the extent the interactive process might be construed to have begun with plaintiff's injury, the company provided all the accommodation Picazo requested, and he alone was responsible for any breakdown in communication between the parties. Defendant points out that, in the days following his injury, plaintiff only asked for time off, which he acknowledges the company granted. (Harvey Decl., Ex. A (Picazo Depo. at 239:18-25, 249:6-8)). It is undisputed that Picazo then unilaterally decided to return to work without informing Randstad. (*Id*., Ex. B (Picazo Depo. at 323:3-13; 325:2-7)). And, even after Becerra directed plaintiff to contact Randstad about other possible positions, he did not do so for over a week. (*Id.*, Ex. B (Picazo Depo. at 329:15-330:7); Shirakawa Decl. at ¶ 9). Meanwhile, Randstad says it had little information about plaintiff's wrist injury, only to be told that he walked out before completing the mandatory drug screen---conduct that indisputably was grounds for plaintiff's immediate termination. (*See, e.g.*, McArthur Decl. at ¶¶ 9-10; Gonzales Decl. at ¶ 15; Harvey Decl., Ex. A (Picazo Depo. at 198:24-199:25, Ex. E)). Plaintiff has not presented evidence refuting these facts or raising a genuine issue of material fact whether Randstad failed to participate in good faith in any interactive process. On this claim, plaintiff's summary judgment motion is denied and defendant's is granted.

### D. Failure to prevent discrimination, Cal. Gov. Code § 12940(k)

Because plaintiff cannot establish his underlying claim for disability discrimination, he cannot maintain a derivative claim under Cal. Gov. Code § 12940(k) for failure to prevent discrimination. *See Featherstone*, 10 Cal. App.5th at 1166 ("'[T]here's no logic that says an employee who has not been discriminated against can sue an employer for not preventing discrimination that didn't happen . . ..'") (quoting *Trujillo v. N. Cnty. Transit Dist.*, 63 Cal. App.4th 280, 288-89 (1998)). On this claim plaintiff's summary judgment motion is denied and defendant's is granted.

### E. Unlawful retaliation, Cal. Gov. Code § 12940(h)

FEHA prohibits an employer from "discharg[ing], expel[ling], or otherwise discriminat[ing] against any person because the person has opposed any practices forbidden under this part or because the person has filed a complaint, testified, or assisted in any proceeding under

this part." Cal. Gov. Code § 12940(h). Picazo alleges that Randstad terminated his employment "in retaliation for [his] opposition to the disability discrimination that took place." (Complaint ¶ 65). And, in deposition, Picazo testified that he believed Randstad terminated him in retaliation for requesting an accommodation and for filing a workers compensation claim. (Harvey Decl., Ex. A (Picazo Depo. at 260:22-262:11)).[4]

"To establish a prima facie case of retaliation under the FEHA, a plaintiff must show '(1) he or she engaged in a 'protected activity,' (2) the employer subjected the employee to an adverse employment action, and (3) a causal link existed between the protected activity and the employer's action.'" *Scotch*, 173 Cal. App.4th at 1020 (quoting *Yanowitz v. L'Oreal USA, Inc*. 36 Cal.4th 1028, 1042 (2005)).

Defendant argues that plaintiff cannot establish a prima facie case because there was no discrimination for him to oppose. Having concluded that, as a matter of law, Picazo cannot maintain claims for disability discrimination or for failure to accommodate, the court agrees.

That leaves his contention that he was fired for filing a workers compensation claim. Randstad points out that an entirely different statute, California Labor Code § 132a, prohibits an employer from discriminating against an employee for filing a workers compensation claim. And, noting that § 132a grants jurisdiction to the State Workers Compensation Appeals Board to remedy violations, at least one court has held that § 132a cannot be the basis for a common law claim for wrongful termination. *Dutra v. Mercy Med. Ctr. Mt. Shasta*, 209 Cal. App.4th 750, 754-56 (2012). In any event, Randstad says that the record indicates that its staff helped Picazo fill out the workers compensation paperwork following his injury. (Harvey Decl., Ex. A (Picazo Depo. at 239:18-240:4, 248:23-249:8, 252:2-17)).

But even if, liberally construing the record in Picazo's favor, he could establish a prima facie case for retaliation based on the filing of his workers compensation claim, that would not be

---

[4] Insofar as the record suggests that Picazo might also contend that defendant fired him in retaliation for filing a charge with the California Department of Fair Employment and Housing (DFEH), the record indicates that the charge was filed on September 21, 2016, over two months after plaintiff was terminated. The DFEH charge therefore cannot be the basis of plaintiff's retaliation claim.

19

the end of the analysis. The burden would then shift to Randstad to show a legitimate, nonretaliatory reason for Picazo's termination. *Scotch*, 173 Cal. App.4th at 1020. For the reasons discussed above, defendant has met that burden by producing competent evidence that the sole reason for plaintiff's termination was his failure to complete the mandatory drug screen. The burden therefore shifts back to Picazo to submit evidence showing that Randstad's proffered explanation is a pretext. As discussed, he has failed to do so. And, "temporal proximity alone is not sufficient to raise a triable issue as to pretext once the employer has offered evidence of a legitimate, nondiscriminatory reason for the termination." *Arteaga*, 163 Cal. App.4th at 353.

On this claim, plaintiff's summary judgment motion is denied and defendant's is granted.

### F. Wrongful termination in violation of public policy and Cal. Govt. Code § 12940, et seq.

Because plaintiff cannot maintain claims for disability discrimination or retaliation, as a matter of law, his claim that he was wrongfully terminated in violation of public policy because of his claimed disability or in retaliation for any protected activity also fails. On this claim, plaintiff's summary judgment motion is denied and defendant's is granted.

### G. Prayer for Punitive Damages

Having denied plaintiff's summary judgment motion and granted defendant's summary judgment motion on all claims for relief, defendant's request for summary judgment as to the complaint's prayer for punitive damages is also granted.

### ORDER

Based on the foregoing, plaintiff's motion for summary judgment is denied and defendant's motion for summary judgment is granted. The Clerk shall enter judgment accordingly and close this file.

SO ORDERED.

Dated: March 27, 2018

HOWARD R. LLOYD
United States Magistrate Judge